E-FILED; Anne Arundel Circuit Court
Docket: 3/15/2019 6:30 PM; Submission: 3/15/2019 6:30 PM

MARYLAND:

IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY

| | |
|---|---|
| EUGENE R. SELLERS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. C-02-CV-19-000867 |
| DAWSON FEDERAL INCORPORATED, | ) |
| Serve: Bryan Hara, Registered Agent<br>900 Fort Street Mall, Suite 1850<br>Honolulu, Hawaii 96813-3713 | ) **JURY TRIAL DEMANDED** |
| and | ) |
| DAWSON SOLUTIONS, LLC, | ) |
| Serve: Dawna Smith, Registered Agent<br>310 Voyager Way, Suite 105<br>Huntsville, Alabama 35806 | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Eugene R. Sellers ("Mr. Sellers"), by counsel, states as follows for his Complaint against Defendants Dawson Federal, Incorporated ("Dawson") and Dawson Solutions, LLC ("Dawson Solutions," collectively, the "Defendants"):

### INTRODUCTION

1. This case seeks redress for damages stemming from the breach of an employment contract and wrongful acts by the defendants in the wake of Mr. Sellers' separation from employment with the Defendants. Following Mr. Sellers' termination of employment, Defendants have recognized that Defendants owe Mr. Sellers certain compensation based on the

terms of his employment with Defendants. To date, however, Defendants have failed to pay the appropriate compensation owed to Mr. Sellers.

## PARTIES

2. Mr. Sellers is a natural person who was formerly employed by Defendants and who performed services for them in, among other places, Anne Arundel County, Maryland.

3. Upon information and belief, Dawson is a corporation which competes for and provides services under government contracts with the United States of America. Dawson regularly provides services for its federal clients in, among other places, Anne Arundel County, Maryland.

4. Upon information and belief, Dawson Solutions is a limited liability company which competes for and provides services under contracts with the United States of America. Dawson Solutions regularly provides services for its federal clients in, among other places, Anne Arundel County, Maryland.

5. Upon information and belief, Dawson and Dawson Solutions are wholly owned by the same entity.

## JURISDICTION AND VENUE

6. Defendants are subject to personal jurisdiction in the State of Maryland pursuant to Maryland Code, Courts and Judicial Proceedings Article § 6-102.

7. Venue in this Court is appropriate pursuant to Maryland Code, Courts and Judicial Proceedings Article §§ 6-201 and 6-202.

## FACTUAL BACKGROUND

8. On November 18, 2014, Dawson entered into an employment contract (the "Contract") with Mr. Sellers for the position of "Senior Subject Matter Expert, Senior Counter-

2

Intelligence Operations Planner." A true and correct copy of the Contract is attached as **Exhibit 1**.

9. The duties of this position included business development and acquisition of Department of Defense and other government contracts, as well as operational responsibilities to ensure the successful completion of said contracts.

10. As a result of his job duties, Mr. Sellers regularly provided services to Defendants and their federal clients in this county, in surrounding Maryland counties, in Virginia, in Washington, D.C., and elsewhere.

### THE EMPLOYMENT TERM

11. While employed by Dawson, Mr. Sellers' compensation included, among other benefits, $150,000.00 in annual salary, graduated sales incentives of up to 1.5% for net sales of government contracts, paid quarterly, and four weeks of paid vacation each year. Mr. Sellers was employed by Dawson from November 24, 2014 until approximately January 1, 2018, when Dawson transferred his employment to sister entity Dawson Solutions.

12. At the time of his transfer, Mr. Sellers' base annual salary was raised to $180,000.00; otherwise, his job duties, incentive compensation, and his employer's obligations under the employment contract remained the same.

13. During the course of Mr. Sellers' employment with the Dawson entities, he successfully procured various one-year and multi-year federal contracts for the Defendants and related entities totaling approximately $63,800,000.00.

14. Over the course of his employment, Mr. Sellers was the Senior Dawson Manager in the National Capital Region.

15. Mr. Sellers, acting on behalf of Dawson as the Senior Dawson Manager, generally engaged with clients, met with partner companies, coordinated contract matters, hired and terminated Dawson employees, and conducted business in Maryland on a weekly, and sometimes daily, basis.

16. As Senior Dawson Manager, Mr. Sellers was directed to travel to Andrews Air Force Base in Prince George's County, Maryland to terminate Dawson employees on multiple occasions, meet with government officials, and engage with Dawson employees at construction sites.

17. At other times, Mr. Sellers traveled to Ft. Dietrich in Frederick, Maryland to engage with the federal government pursuant to his sales responsibilities or to terminate Dawson employees.

18. On behalf of the Dawson entities, Mr. Sellers traveled to Fort Meade in Anne Arundel County, Maryland to solicit contract HC1047-17-C-4009 with the Defense Information Systems Agency. Due to Mr. Sellers' efforts, Dawson was awarded contract HC1047-17-C-4009.

19. Mr. Sellers also secured contract HHM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 with the Defense Intelligence Agency on behalf of Dawson, which required submitting contract documents to the Maryland Procurement Office in Fort Meade on a monthly basis.

20. Additionally, Mr. Sellers routinely traveled to and conducted business on behalf of Dawson at the Acquisition Resource Center in Hanover, Maryland.

21. In a performance review for the period of October 1, 2015 through October 31, 2017, Dawson rated Mr. Sellers as "exceeds expectations" and noted that "Gene knocked it out

MAY/15/2019/WED 09:41 AM FAX No. P. 006
Case 1:19-cv-01615-LO-JFA Document 2 Filed 05/16/19 Page 5 of 13 PageID# 53
Case 1:19-cv-01451-GLR Document 1-2 Filed 05/16/19 Page 6 of 29

of the park this year" and that he "is a star player for our sales team." A true and correct copy of the performance review is attached as **Exhibit 2.**

*Dawson's Payment Issues*

22. Despite Mr. Sellers' exceptional performance and all the business that Mr. Sellers brought into Dawson, Dawson failed to pay Mr. Sellers the amounts agreed pursuant to the Contract.

23. Dawson failed to pay Mr. Sellers his full $150,000.00 in base salary for the years of 2016 and 2017 – paying only $102,425.51 and $113,132.96, respectively.

24. In total, Dawson failed to pay $84,441.53 in base salary compensation in 2016 and 2017 to Mr. Sellers.

25. Defendants also failed to pay the quarterly sales incentives owed to Mr. Sellers at any point during his employment with either Dawson or Dawson Solutions.

26. Still, Mr. Sellers continued working diligently and bringing in millions of dollars of business to Dawson, despite the increasing debt that the Dawson entities owed to him.

27. Mr. Sellers obtained the following government contracts for Defendants or their parent company and their related entities over the course of his employment with Defendants, for which sales incentives were not paid:

- DJF-16-1200-V-0005131 with the Federal Bureau of Investigations in 2016, yielding a sales incentive of **$320.00**;
- HHM402-16-C-0072 with the Defense Intelligence Agency in 2016, a multi-year contract from 2016 through 2020, yielding a total sales incentive of **$71,777.93**;

5

- DJF-16-1200-D-0003284 with the Federal Bureau of Investigations in 2016, yielding a sales incentive of **$1,675.35**;
- W91RUS-16-C-0049 with the U.S. Army Intelligence Center of Excellence in 2016, a multi-year contract from 2016 through 2020, yielding a total sales incentive of **$31,323.54**;
- W900KK-17-C-0020 with the U.S. Army HUMINT Training Joint Center of Excellence in 2017, a multi-year contract from 2017 through 2020, yielding a total sales incentive of **$201,608.18**;
- W91249-17-P-0130 with the 202nd Military Intelligence Battalion in 2017, yielding a sales incentive of **$764.97**;
- W91249-17-R-0123 with the U.S. Army Cyber Center of Excellence in 2017, a multi-year contract from 2017-2019, yielding a total sales incentive of **$68,417.33**;
- HT0011-17-R-0027 with the Defense Health Agency, J-6 in 2017, a multi-year contract from 2017 through 2022, yielding a total sales incentive of **$291,706.82**;
- HC1047-17-C-4009 with the Defense Information Systems Agency in 2017, yielding a sales incentive of **$19,563.06**;
- A contract with the U.S. Army Corps of Engineers, Pittsburgh District in 2018, yielding a sales incentive of **$5,304.46**; and
- A contract with the 99th Contracting Squadron, Nellis Air Force Base in 2018, yielding a sales incentive of **$11,999.25**.

6

MAY/16/2019/THU 03:50 PM FAX No. P. 008
Case 1:19-cv-01615-LO-JFA Document 2 Filed 05/16/19 Page 7 of 13 PageID# 55
Case 1:19-cv-01451-GLR Document 1-2 Filed 05/16/19 Page 8 of 29

28. Upon information and belief, additional contracts have been awarded to Dawson and its affiliates based on the work performed by Mr. Sellers for which he is owed compensation.

*Termination*

29. On August 28, 2018, Mr. Sellers recognized that his working conditions had become intolerable.

30. The Defendants continued to fail to pay the routine commission payments that he was owed, but this financial burden was compounded by inappropriate and unprofessional incidents occurring in the work place, including one in which a co-worker threatened to "punch [Mr. Sellers] in the face," and another wherein a co-worker included an image in a presentation captioned with the phrase "these are the guns I use to shoot liberals."

31. As a result of the intolerable working conditions, Mr. Sellers offered his resignation via e-mail.

32. On September 10, 2018, Mr. Sellers met with representatives of Dawson Solutions (the "Meeting"), including his supervisor Michael Patterson,[1] Mr. Bredenhoff, and Ms. Reeves (by telephone).

33. At the Meeting, Mr. Sellers was presented with a letter of resignation (the "Resignation Letter") purporting to end his employment with Dawson Solutions.

34. Mr. Sellers was explicitly told that a failure to execute the Resignation Letter would result in his termination.

35. Mr. Patterson represented that he had the authority to negotiate a severance package and the payment of appropriate commissions to Mr. Sellers.

---

[1] Mr. Patterson was Mr. Sellers' supervisor at both Dawson and Dawson Solutions.

7

36. After over an hour of negotiation, including discussions of the threatening environment fostered at Dawson, Mr. Sellers executed the Resignation Letter, contingent on a separation agreement and severance consideration totaling $371,409.01. A true and correct copy of the Resignation Letter is attached as **Exhibit 3**.

37. That same evening, Mr. Sellers received a phone call from Ms. Reeves and Ms. Smith, another Dawson Solutions representative, once again refusing to pay Mr. Sellers compensation that Dawson Solutions had agreed to pay.

38. This time, Dawson Solutions rescinded the negotiated agreement because the CEO of Dawson felt that the commission was too high. No further explanation was provided for Dawson's change of position.

39. As a result, Dawson Solutions constructively discharged, or otherwise terminated, Mr. Sellers without reaching any agreement and without paying Mr. Sellers for back pay, incentives, or outstanding vacation.

40. Dawson Solutions' employment policy provides that any earned but unused vacation will be paid upon termination of employment with the employee's final paycheck.

41. Dawson Solutions failed to follow its own policy.

42. Mr. Sellers' final paycheck was dated September 28, 2018, and showed accrued vacation of 462.16 hours and a base pay rate of $86.54 per hour – a total of $39,995.33 in accrued vacation. The September 28, 2018 paycheck did not include payment for any back pay, accrued vacation, or earned incentive pay. A true and correct copy of the September 28, 2018 paycheck record is attached as **Exhibit 4**.

8

43. On or about October 23, 2018, Dawson sent Mr. Sellers another paycheck that included payment for $29,010.80 in accrued vacation and $33,574.57 in incentive pay. A true and correct copy of the October 23, 2018 paycheck record is attached as **Exhibit 5**.

44. Upon information and belief, the October 23, 2018 paycheck represented payment for only 335.23 hours of Mr. Sellers' 462.16 hours of accrued vacation pay and only $33,574.57 in payment for $704,460.89 in earned sales commissions.[2]

45. Despite requests to Dawson's counsel, no explanation of the values associated with the October 23, 2018 counsel were provided.

46. Dawson and Dawson Solutions have failed to pay the full back pay, incentive pay, and vacation pay owed to Mr. Sellers to date.

47. The wages withheld from Mr. Sellers are not withheld as a result of a *bona fide* dispute.

48. At all times, Mr. Sellers has complied with his obligations under the Contract.

### Count I
### Violation of the Maryland Wage Payment and Collection Law
(Dawson)

49. Mr. Sellers reasserts the allegations in the foregoing paragraphs as if fully restated herein.

50. Dawson withheld the wages of Mr. Sellers' full salary due to him in 2016 and 2017, and withheld the wages related to sales incentives owed to Mr. Sellers in 2016 and 2017.

51. Dawson further failed to pay Mr. Sellers' earned compensation within two weeks from the date that his employer changed to Dawson Solutions on January 1, 2018.

---

[2] The October 23, 2018 payment came from a Dawson payroll account. Upon information and belief, this payment was for sales incentive wages incurred while Mr. Sellers was employed by Dawson.

9

52. More than two weeks after Mr. Sellers' termination from all Dawson entities, and more than two weeks after the date on which Mr. Sellers was issued his final paycheck, Dawson continued to withhold wages owed to Mr. Sellers.

53. These wages were not withheld as a result of a bona fide dispute.

54. As a direct and proximate result of Dawson's violation of the Maryland Wage Payment and Collection Law, Mr. Sellers has had wages withheld in an amount not less than $653,582.61 in sales incentives and $84,441.53 in base salary compensation, for a total amount of not less than $738,024.14.

55. Pursuant to the Maryland Wage Payment and Collection Law, Mr. Sellers is entitled to be awarded three times the withheld wages, a total of $2,214,072.42 in damages, as well as reasonable attorney's fees and costs.

### Count II
### Violation of the Maryland Wage Payment and Collection Law
### (Dawson Solutions)

56. Mr. Sellers reasserts the allegations in the foregoing paragraphs as if fully restated herein.

57. Upon information and belief, Dawson Solutions was assigned the duties of the Contract on or about January 1, 2018.

58. Dawson withheld the sales incentives owed to Mr. Sellers in 2018 and withheld wages owed to Mr. Sellers due to accrued vacation time to be paid as required by the Contract, incorporating the employment policies of Dawson Solutions.

59. These wages were not withheld as a result of a bona fide dispute.

60. As a direct and proximate result of Dawson Solutions' violation of the Maryland Wage Payment and Collection Law, Mr. Sellers has had wages withheld in an amount not less

10

than $17,303.71 in withheld sales incentives and $10,984.53 in withheld and accrued vacation pay, for a total amount of not less than $28,288.24.

61. Pursuant to the Maryland Wage Payment and Collection Law, Mr. Sellers is entitled to be awarded three times the withheld wages, a total of $84,864.72 in damages, as well as reasonable attorney's fees and costs.

### Count III
### Breach of Contract
### (Dawson)

62. In the alternative, Mr. Sellers reasserts the allegations in the foregoing paragraphs 1 through 48 as if fully restated herein.

63. The Contract is a valid and binding contract between Dawson and Mr. Sellers, under which Dawson is obligated to pay Mr. Sellers up to 1.5% in sales incentives on net government contracts obtained by Mr. Sellers and to pay a base salary of $150,000.00.

64. Dawson breached the Contract by failing and refusing to pay Mr. Sellers' full salary due to him in 2016 and 2017, and failing to pay sales incentives to Mr. Sellers in 2016 and 2017.

65. As a direct and proximate result of Dawson's breach of the Contract, Mr. Sellers has suffered damages in an amount not less than $653,582.61 in sales incentives and $84,441.53 in base salary compensation, for a total amount of not less than $738,024.14.

### Count IV
### Breach of Contract
### (Dawson Solutions)

66. In the alternative, Mr. Sellers reasserts the allegations in the foregoing paragraphs 1 through 48 as if fully restated herein.

11

67. Upon information and belief, Dawson Solutions was assigned the duties of the Contract on or about January 1, 2018.

68. The Contract is a valid and binding contract between Dawson Solutions and Mr. Sellers, under which Dawson Solutions is obligated to pay Mr. Sellers up to 1.5% in sales incentives on government contracts obtained by Mr. Sellers and to pay Mr. Sellers in accordance with the employment policies of Dawson Solutions, including payment of accrued vacation time at a rate pursuant to his current base salary of $180,000.00.

69. Dawson breached the Contract by failing and refusing to pay sales incentives to Mr. Sellers in 2018 and failing and refusing to pay Mr. Sellers' accrued vacation time as required by the Contract, incorporating the employment policies of Dawson Solutions.

70. As a direct and proximate result of Dawson Solutions' breach of the Contract, Mr. Sellers has suffered damages in an amount not less than $17,303.71 in withheld sales incentives and $10,984.53 in withheld and accrued vacation pay, for a total amount of not less than $28,288.24.

WHEREFORE, Mr. Sellers respectfully requests that the Court enter an Order granting the following relief:

 a. Damages in an amount to be proven at trial, but not less than $2,298,937.14;

 b. Pre-judgment interest at the maximum legal rate;

 c. Post-judgment interest at the maximum legal rate;

 d. Reasonable attorney's fees;

 e. Costs; and

 f. Such other and further relief as the Court deems appropriate.

12

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

EUGENE R. SELLERS

By: ___/s/ Wayne G. Travell___
        Counsel

Wayne G. Travell, Esq. (CPF No. 8406010373)
Robert R. Vieth, Esq. (CPF No.0306090008)
Roxanne F. Rosado, Esq. (CPF No. 0901140003)
HIRSCHLER FLEISCHER, P.C.
8270 Greensboro Drive, Suite 700
Tysons, Virginia 22102
Telephone: (703) 584-8903
Facsimile: (703) 584-8901
E-mail: wtravell@hf-law.com
E-mail: rvieth@hirschlerlaw.com
E-mail: rrosado@hirschlerlaw.com

*Counsel for Eugene Sellers*

## RULE 1-313 CERTIFICATION

As provided by Rule 1-313 of the Maryland Rules, the undersigned hereby certify that each is admitted to practice law in the State of Maryland.

___/s/ Wayne G. Travell___

___/s/ Robert R. Vieth___

___/s/ Roxanne F. Rosado___

11038248.1 043747.00001

13